

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00072-CV

_____

ALMA ROSA GALINDO, Appellant

V.

THOMAS SNODDY, Appellee

On Appeal from the 4th District Court
Rusk County, Texas
Trial Court No. 2011-436-A

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

O P I N I O N

Alma Rosa Galindo's brother was charged with a driving-while-intoxicated offense, and he was in need of a bond to be released from jail. Galindo and her husband, Brad Murphy, provided the $1,500.00 paid to Willie Alexander as a bail-bond fee to act as the surety for Galindo's brother. Galindo's brother signed the bond as the principal, and neither Galindo nor Murphy acted as a surety. Apparently, Galindo's brother either failed to appear when his case was called for trial or Alexander feared that he would fail to appear, leading Alexander to believe that the bond would be forfeited and he (as bondsman) would owe the entire face amount of the $15,000.00 bond.[1] Alexander represented that Galindo needed to pay Alexander the full face amount of the bond or she would be arrested, and Thomas Snoddy (apparently a business associate of Alexander's) made similar representations to Murphy, who relayed them to Galindo.

Galindo paid Alexander the full $15,000.00 appearance bond amount and claims that the threats made by Alexander and Snoddy resulted in creation of constant fear and severe mental anguish within her, precipitating interruptions in her sleep, alteration of her eating habits, and interruption of her intimate relationship with her husband.

Galindo eventually sued Snoddy,[2] Alexander, and Gerald Todd[3] for common-law fraud, violations of both the Texas Deceptive Trade Practices Act (DTPA) and the Texas Debt

---

[1]Galindo disputes that her brother had failed to appear at the time of the misrepresentations. It is undisputed, though, that Galindo's brother eventually failed to appear for trial.

[2]Although this Court has concurrent jurisdiction with the Twelfth Court of Appeals in Tyler over cases arising in Rusk County, this case was originally appealed to the Tyler Court. This case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). Except as specified, we are unaware of any conflict between precedent of the Tyler Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

Collection Practices Act, and for intentional infliction of emotional distress. Snoddy filed a motion for summary judgment, which the trial court granted, dismissing Galindo's suit against Snoddy as to all causes of action. Thereafter, the trial court severed Galindo's cause of action against Snoddy from those against the other two defendants and assigned it a separate cause number. It is the grant of that summary judgment from which Galindo appeals.

Snoddy's motion was a combination traditional and no-evidence motion for summary judgment.[4] A summary judgment can only be affirmed on grounds specifically presented to the trial court in the summary judgment motion. TEX. R. CIV. P. 166a(c); *see City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex. 1979); *Driskill v. Ford Motor Co.*, 269 S.W.3d 199, 206 (Tex. App.—Texarkana 2008, no pet.). Snoddy alleged three grounds for recovery in his summary judgment motion. First, Snoddy averred that Galindo's action was barred by the two-year statute of limitations. Second, Snoddy relied on a failure of Galindo to produce any evidence of any threats or false representations, evidence of threats or misrepresentations prior to the payment, or evidence of Galindo's reliance on alleged threats or misrepresentations. Third, the motion sought a traditional summary judgment on Galindo's intentional infliction of emotional distress claim.

---

[3]Todd's involvement in this matter is not made entirely clear by the record. Apparently, Todd either provided some asset pledge that made it possible for Alexander to act as a bondsman or Alexander acted in partnership with Todd in the bonding business. Galindo makes mention of apparent authority, vicarious liability, and other theories as the basis for Todd's alleged liability.

[4]Although the Texas Supreme Court has approved of filing combination summary judgment motions, the better practice is to clearly delineate which type of summary judgment is being sought. *Binur v. Jacobo*, 135 S.W.3d 646, 650–51 (Tex. 2004); *Holloway v. Tex. Elec. Util. Constr., Ltd.*, 282 S.W.3d 207, 213 n.3 (Tex. App.—Tyler 2009, no pet.) ("[T]the better practice is to file two separate motions.").

Galindo has raised ten issues on appeal complaining that the trial court erred in granting Snoddy's traditional and no-evidence summary judgment for each of his four causes of action, as well as for vicarious liability.[5] Because a trial court can only grant summary judgment for the grounds argued in the summary judgment motion, a number of Galindo's arguments are unnecessary. Therefore, we have reorganized Galindo's arguments to address the three grounds before the trial court. We conclude (1) the trial court correctly granted summary judgment on Galindo's intentional infliction of emotional distress claims, (2) limitations does not bar suit for Galindo's remaining claims, and (3) the record contains some evidence Snoddy made threats and misrepresentations relied upon by Galindo.

**1. Galindo is Barred from Pursuit of a Claim for Intentional Infliction of Emotional Distress**

Snoddy's motion for summary judgment argued intentional infliction of emotional distress, a "gap-filler" tort, was not available because Galindo could pursue other causes of action. Galindo responds that her claims meet the elements of intentional infliction of emotional distress explained in *Kroger Texas Ltd. Partnership v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006), the conduct was "so unusual that she has no other means to address her emotional distress," and

---

[5]Galindo's initial petition only alleged vicarious liability against Todd. The original petition contains a section titled "Conspiracy," but the facts alleged are inconsistent with conspiracy. The substance under the conspiracy title does not refer to Snoddy and only to Todd being "expressly and/or vicariously" liable by "the expressed or implied grant of authority" to Alexander. After Snoddy filed his motion for summary judgment, Galindo filed a supplemental petition alleging that Snoddy held himself out as Alexander's boss and "acted as the princip[al] of Defendant Alexander and is financially responsible for the culpable conduct of Defendant Alexander." Although the pleadings had only given Snoddy fair notice of vicarious liability based on agency and apparent authority, Galindo argued in his response that the defendants formed a conspiracy and made no argument based on vicarious liability. Snoddy filed a reply to Galindo's response, claiming there was no evidence to support vicarious liability. On appeal, Galindo argues that Snoddy was vicariously liable based on agency and apparent authority—theories pled, but never argued, by Galindo to the trial court. Because we conclude the trial court erred in granting Snoddy's motion for summary judgment, it is not necessary for us to decide whether there is some evidence of vicarious liability.

"[i]t is not believed that the potential scope of exemplary damages, under any other theory presented by Appellant, is as broad as that provided under the intentional infliction theory."

The Texas Supreme Court has explained that intentional infliction of emotional distress is a "gap-filler" tort intended to be used only where "a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann-La Roche*, *Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). When the gravamen of a plaintiff's complaint can be pursued by another recognized theory of redress, a claim for intentional infliction of emotional distress is not available. *Id.* Mental anguish resulting from Snoddy's threats and misrepresentations can be pursued under fraud, the DTPA, and the Texas Debt Collection Practices Act.[6] The Debt Collection Practices Act specifically provides a cause of action for "threatening to file a charge, complaint, or criminal action against a debtor when the debtor has not violated a criminal law." TEX. FIN. CODE ANN. § 392.301(a)(6) (West 2006). The Texas Supreme Court has rejected the argument that a greater potential for damages (such as through an award of exemplary damages) permits suit for intentional infliction of emotional distress when statutory remedies for the tortious conduct exist. *Waffle House*, *Inc. v. Williams*, 313 S.W.3d 796, 808–09 (Tex. 2010); *Zeltwanger*, 144 S.W.3d at 447.

The summary judgment on this ground was appropriate. Because Galindo has other remedies under specific statutes for the same conduct, intentional infliction of emotional distress is not available. Intentional infliction of emotional distress is not available to her merely because

---

[6]The Texas Debt Collection Practices Act permits recovery even when the debt which is sought to be collected does not belong to the plaintiff. *See Monroe v. Frank*, 936 S.W.2d 654, 660 (Tex. App.—Dallas 1996, writ dism'd w.o.j.) (bail bondsman was debt collector).

there is a greater potential for damages under that cause of action. The trial court did not err in granting Snoddy's traditional motion for summary judgment on intentional infliction of emotional distress.

**2.      Limitations Does Not Bar Galindo's Remaining Claims**

Galindo argues on appeal that the trial court erred in granting a traditional summary judgment on the claim that her suit is barred by the two-year statute of limitations. According to Galindo, her causes of action accrued on or after November 12, 2009—the day she paid the bond. Snoddy contravenes that claim, alleging that if Galindo has any causes of action, they arose at the time any threats were uttered, a time sometime before November 12, 2009.

To prevail on a traditional motion for summary judgment, a movant must establish that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Clear Creek Basin Auth.*, 589 S.W.2d 671; *Baubles & Beads v. Louis Vuitton*, *S.A.*, 766 S.W.2d 377, 379 (Tex. App.—Texarkana 1989, no writ). The defendant must conclusively negate at least one element of each of the plaintiff's theories of recovery or plead and conclusively establish each element of an affirmative defense. *Sci. Spectrum*, *Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Because the movant bears the burden of proof, all conflicts in the evidence are disregarded, evidence favorable to the nonmovant is taken as true, and all doubts as to the genuine issues of material fact are resolved in favor of the nonmovant. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985); *see Limestone Prods. Distribution*, *Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002) (per curiam); *Rhone-Poulenc*, *Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). A traditional motion

6

for summary judgment must stand on its own merits, and the nonmovant may argue on appeal that the movant's summary judgment proof is insufficient as a matter of law, even if the nonmovant filed no response to the motion. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam).

Fraud does not occur until "'the plaintiff has acted in reliance upon false representations.'"[7] The only action upon which Galindo relied as an alleged representation was the payment of the face amount of the bond paid by her November 12, 2009. For the most part, the discovery rule "provides that limitations run from the date the plaintiff discovers or should have discovered, in the exercise of reasonable care and diligence, the nature of the injury." *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex. 1988). Further, it is well-established that the discovery rule applies to both common-law fraud and the DTPA.[8] *Gonzales v. S. Olshan Found. Repair Co., LLC*, 400 S.W.3d 52, 58 (Tex. 2013); *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997). Galindo's unfair Debt Collection Practices Act claim is more problematic. Whether the discovery rule applies to the debt collection practices prohibited by that statute appears to be a novel issue. Neither party provides us with any authority concerning whether the discovery rule applies, and we were unable to locate any authority in our own research. Further

---

[7]*Cal Fed Mortg. Co. v. Street*, 824 S.W.2d 622, 626 (Tex. App.—Austin 1991, writ denied) (quoting *Linkenhoger v. Am. Fid. & Cas. Co.*, 260 S.W.3d 884, 886 (Tex. 1953)).

[8]Although Galindo did not explicitly plead the discovery rule, Galindo's pleadings provide fair notice of the application of the discovery rule. Galindo's petition alleges that the falsity of the representations was not discovered until after she had made the demanded payment. An attorney of reasonable competence would understand these allegations as invoking the discovery rule. *See Marin v. IESI TX Corp.*, 317 S.W.3d 314, 331–32 (Tex. App.— Houston [1st Dist.] 2010, pet. denied) (fair notice requires that opposing attorney of reasonable competence can ascertain nature and basic issues of controversy). Snoddy did not specially except to the failure to explicitly plead the discovery rule and, therefore, waived any pleading defect. *See* TEX. R. CIV. P. 90. Further, Snoddy quotes from the discussion of the discovery rule in *Gonzales*, 400 S.W.3d at 58.

complicating matters is the fact that an unfair debt collection claim can be brought either for harassment or for false representations. The facts as alleged by Galindo could support a claim for both, but Galindo's pleadings fail to specify under which theory her claims are brought. Even so, Snoddy made no special exceptions to those pleadings. *See* TEX. R. CIV. P. 90. Because Snoddy did not specially except, we will assume, without deciding, that Galindo's claims are for fraudulent misrepresentations. We conclude, at a minimum, that the discovery rule would apply to claims under the Texas Debt Collection Practices Act for fraudulent misrepresentations.

Snoddy had the burden to negate the discovery rule. *See Pustejovsky v. Rapid-Am. Corp.*, 35 S.W.3d 643, 646 (Tex. 2000). Galindo's petition states that she and her husband were unaware of the falsity of the representations made to them and paid Alexander $15,000.00 as a result of the false representations. The record contains summary judgment evidence supporting this allegation. The discovery rule tolls the statute of limitations for fraudulent misrepresentations until the claimant discovers the falsity of the representations.[9] *Little v. Smith*, 943 S.W.2d 414, 420 (Tex. 1997); *LaGloria Oil & Gas Co. v. Carboline Co.*, 84 S.W.3d 228, 235 n.5 (Tex. App.—Tyler 2001, pet. denied). There is summary judgment evidence that Galindo did not learn that the representations were false until sometime after November 12,

---

[9]We note Snoddy relies upon the following quote from *Gonzales*: "'Once a claimant learns of a wrongful injury, the statute of limitations begins to run even if the claimant does not yet know 'the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it.''" *Gonzales*, 400 S.W.3d at 58 (quoting *Exxon Corp. v. Emerald Oil & Gas Co*, 348 S.W.3d 194, 207 (Tex. 2011) (quoting *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 83 (Tex. 2004))). Snoddy interprets this quote as supporting his argument that the causes of action accrued when the representation was made. The Texas Supreme Court, however, simply observed that the statute begins to run when the claimant learns of the injury, regardless of when the extent of the damages is discovered. *Id*. In a fraud case, a claimant learns of the injury when the falsity of the representation is discovered.

2009. Therefore, limitations would not have begun to run for the fraud and DTPA claims until sometime after that date. The parties agree that the two-year statute of limitations applies to all of Galindo's claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (West Supp. 2013). Galindo's lawsuit was filed November 14, 2011. The Texas Civil Practice and Remedies Code provides, "If the last day of a limitations period under any statute of limitations falls on a Saturday, Sunday, or holiday, the period for filing suit is extended to include the next day that the county offices are open for business." TEX. CIV. PRAC. & REM CODE ANN. § 16.072 (West 2008); *Martinez v. Windsor Park Dev. Co.*, 833 S.W.2d 950, 951 (Tex. 1992) (per curiam) (defining term "holiday" under Section 16.072); *see ZYZY Corp. v. Hernandez*, 345 S.W.3d 452, 456 (Tex. App.—San Antonio 2011, no pet.) (limitations period extended when courthouse was closed even though suit could have been filed in another county). November 12, 2011, was a Saturday, and Galindo filed suit the following Monday, November 14, 2009. Since there is summary judgment evidence that Galindo filed her claims within the applicable statute of limitations, a summary judgment based on a limitations bar is not proper.

**3.      Murphy's Affidavit Provides More than a Scintilla of Evidence that Snoddy's Threats Preceded Galindo's Payment**

Snoddy's second ground for summary judgment alleges (a) that there is no evidence that any threats or false representations were made, (b) that there is no evidence that any such threats or misrepresentations were delivered to Galindo prior to the payment, and (c) that there is no evidence that Galindo relied on the alleged threats or misrepresentations.

To prevail on a no-evidence motion for summary judgment, the movant must first allege that there is no evidence of one or more specified elements of a claim or defense of which the

9

nonmovant would have the burden of proof at trial. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006); *see* TEX. R. CIV. P. 166a(i). A nonmovant will defeat a no-evidence summary judgment motion if the nonmovant presents more than a scintilla of probative evidence on each element of his claim. *DR Partners v. Floyd*, 228 S.W.3d 493, 497 (Tex. App.—Texarkana 2007, pet. denied); *Price v. Divita*, 224 S.W.3d 331, 336 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). More than a scintilla of evidence exists when the evidence ""'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'"" *Merrell Dow Pharms.*, *Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (quoting *Burroughs Wellcome Co. v. Crye*, 903 S.W.2d 497, 499 (Tex. 1995) (quoting *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994))). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch*, *Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Kindred v. Con/Chem*, *Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

In his brief, Snoddy argues that Galindo supplied no summary judgment evidence of Snoddy's threats or false representations. Snoddy claims that Galindo testified to an absence of (1) threats from Snoddy, (2) any representation from Snoddy that she would go to jail if she did not pay the money, and (3) lies made to her by Snoddy.

The excerpts of Galindo's deposition contained no denials by her that Snoddy neither lied to her nor threatened her. Although Galindo testified about extensive threats made by Alexander, she only made one reference to Snoddy. The excerpt of the deposition provides,

> The information that I got from these people that were trying to help me made me believe that they were together; therefore, when I contacted Thomas or Mr. Snoddy, and explained to him that he needed to be aware that this went on, and I remember conversations with him. I don't know how many conversations. But I remember him -- him telling me -- I don't know which words he used. But he told me if I had given this man $15,000, I deserved it. And I don't know what else -- a word he said, and he hung up on me.

Snoddy argues that this deposition testimony fails to provide any evidence of threats or misrepresentations and establishes that the only communications with Snoddy occurred after Galindo had already made the payment. In contravention, Galindo responds that the affidavit of Brad Murphy (given as summary judgment evidence) provides sufficient evidence of misrepresentations and reliance. Murphy's affidavit provides,

> Attached hereto is a true and correct copy of Plaintiff's Answers to Snoddy Interrogatories, and the factual statements contained in answers to Interrogatories No. 1 and 2 regarding my conversations with William Alexander and Thomas Snoddy are true and correct, and regarding my interactions between me and Alexander are true and correct.

The interrogatories certified to be true and correct by Murphy's affidavit provide that Snoddy called Murphy in early November 2009 and describe the conversation as follows:

> Snoddy identified himself as the boss of William Alexander and demanded payment of $15,000.00 or else Plaintiff would be arrested. Snoddy said they had no choice and that the money had to be paid if Plaintiff's brother missed his hearing or a warrant for Plaintiff['s] arrest would issue. Snoddy repeatedly stated that Plaintiff would be arrested if the money was not paid; he stated Plaintiff had no choice but to pay the money demanded.

11

The Texas Supreme Court has recognized that representations made with the expectation that the representations would be repeated to the claimant support a fraud cause of action. *See Ernst & Young*, *L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 578 (Tex. 2001).

Snoddy additionally argues that there is no evidence of reliance on any of his statements. Murphy's affidavit also contains evidence of reliance and causation. Murphy's affidavit further provides,

> These contacts were frightening to me and at the time I had no idea that the threats they were making were groundless and false: I believed that my wife was going to be arrested and that the only way for her to avoid being arrested if her brother missed a hearing was for her to pay $15,000.00.
>
> . . . .
>
> I relayed the contents of my conversation with my wife, Alma Galindo, immediately after or soon after each contact, regarding the threats of her arrest and the demand for payment of money from her, and this upset her very much: she acted frightened and became frantic in her movements and timid about leaving the house; she would not answer telephone calls that came into our home and her sleep was interrupted; Alma uncharacteristically paced around the house and avoided the windows; Alma did not appear to be able to concentrate on her work and left tasks incomplete or completed them in a time longer than usual. Our meals were markedly different in that she would not join us as normal at the table; would not complete her meals and would eat at unusual times. She began to connect unusual events that happened to her and us to Alexander or Snoddy or to people she believed were working for them because she came to know that what they had said and threatened were all lies and that they were seeking to continue to harm her because she brought the lawsuit against them. My intimate time with Alma has significantly decreased and was interrupted with Alma's distraction, sometimes voice and at other times just demonstrated, by her fear of the threats from Alexander and Snoddy for her arrest and what she believed to be retribution for her bringing this suit.

For all practical purposes, Snoddy's argument relies primarily on the proposition that the summary judgment evidence referenced in Galindo's response was not attached to the response.

12

Snoddy claims that our review is limited to Galindo's deposition because we cannot consider Galindo's summary judgment evidence attached to a previous motion for summary judgment.

As argued by Snoddy to the trial court, Murphy's affidavit was not attached to Galindo's response. Rather, it was attached to Galindo's response to Todd's motion for summary judgment. Snoddy argues we can only consider the summary judgment evidence attached to the response to his motion for summary judgment and cannot consider evidence attached to previous summary judgment responses.

Galindo's response to Snoddy's motion provides,

Respondent relies on the summary judgment evidence attached to Plaintiff's Response to Defendant's Motion for Summary Judgment on file in this case in response to the summary judgment motion filed on behalf of Defendant Gerald Todd, which are incorporated herein by reference as if attached hereto, pertinent copies of which are attached hereto, to-wit:

1) Affidavit of Brad Murphy (hereinafter referred to as "<u>Murphy</u>"); Exhibit 1;

. . . .

5) Copies of excerpts of the deposition testimony of Respondent . . . .

Snoddy argues that because the statement provides the "pertinent copies of which are attached hereto" (which were not actually attached), the affidavit cannot be considered.

While the better practice is to attach all summary judgment evidence to the motion for summary judgment or the response thereto,[10] Rule 166a does not require the evidence to be attached and merely requires the evidence to be "on file." TEX. R. CIV. P. 166a(d); *see Enter.*

---

[10]We caution practitioners that requiring a trial court to sift through a voluminous record is extremely poor advocacy. As noted by numerous courts, the much preferred practice is to attach all summary judgment evidence to the summary judgment motion or response.

13

*Leasing Co. of Houston v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004) (per curiam); *Gensheimer v. Kneisley*, 778 S.W.2d 138, 140 (Tex. App.—Texarkana 1989, no writ). When a response to a motion for summary judgment explicitly incorporates evidence attached to another summary judgment response in the same file, Texas courts have held that the trial court should consider the referenced evidence.[11] *Schronk*, 387 S.W.3d at 701 n.4; *Blake v. Intco Invs. of Tex., Inc.*, 123 S.W.3d 521, 525 (Tex. App.—San Antonio 2003, no pet.); *R.I.O. Sys. v. Union Carbide Corp.*, 780 S.W.2d 489, 492 (Tex. App.—Corpus Christi 1989, writ denied); *Gensheimer*, 778 S.W.2d at 140; *Dousson v. Disch*, 629 S.W.2d 111, 112 (Tex. App.—Dallas 1981, writ dism'd w.o.j.); *see Barrios*, 156 S.W.3d at 549; *Johnson v. Driver*, 198 S.W.3d 359, 363 (Tex. App.—Tyler 2006, no pet.).

Snoddy additionally argues that Galindo did not request the trial court to take judicial notice of the prior evidence and, according to Snoddy, did not explicitly incorporate the prior summary judgment evidence. While "the nonmovant is not required to 'needlessly duplicate evidence already found in the court's file,'" the nonmovant must either request the trial court to take judicial notice or explicitly incorporate the prior summary judgment evidence. *Blake*, 123 S.W.3d at 525 (quoting *Saenz v. S. Union Gas Co.*, 999 S.W.2d 490, 494 (Tex. App.—El Paso 1999, pet. denied)).

---

[11]We note that the Tyler Court of Appeals held to the contrary in *Burford v. Wilson*, 885 S.W.2d 253, 255 (Tex. App.—Tyler 1994), *rev'd by* 904 S.W.2d 628 (Tex. 1995). We acknowledge that because this case was transferred from the Tyler Court of Appeals, we are required to follow the precedent of the Tyler Court. TEX. R. APP. P. 41.3. *Burford*, though, was reversed by the Texas Supreme Court and, therefore, lacks any precedential value beyond the persuasiveness of its reasoning. Further, as noted by the Waco Court of Appeals, *Burford* is contrary to the reasoning of the Texas Supreme Court in *Barrios*, 156 S.W.3d at 549. *See Schronk v. City of Burleson*, 387 S.W.3d 692, 701 n.4 (Tex. App.—Waco 2009, pet. denied). We decline to find the reasoning of *Burford* persuasive.

Galindo's response did explicitly incorporate the prior summary judgment evidence by reference. Although the motion incorrectly claims pertinent copies will be attached, the motion also contains an explicit incorporation of the prior summary judgment evidence. As noted above, an explicit incorporation of prior summary judgment evidence is permitted. The explicit incorporation was sufficient to require the trial court to consider the explicitly referenced summary judgment evidence that was on file.

The record contains more than a scintilla of evidence of threats or false representations, of threats or misrepresentations occurring prior to the payment, and of reliance on threats or misrepresentations. A scintilla of evidence exists if reasonable persons differ in their conclusions. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). While Galindo's summary judgment evidence could have been better, it was sufficient to defeat a no-evidence motion. The trial court erred in granting the no-evidence motion.

**Conclusion**

The trial court did not err in granting summary judgment on Galindo's claims pertaining to the intentional infliction of emotional distress. Because other causes of action can provide Galindo with a remedy, intentional infliction of emotional distress is not an available cause of action.

The trial court erred in granting summary judgment on Galindo's fraud, DTPA, and unfair debt collection claims. These claims are not barred by limitations, and the record contains more than a scintilla of evidence in support of these claims.

15

We affirm the grant of summary judgment as to the claims of intentional infliction of emotional distress, reverse the dismissal of Galindo's claims that are based on fraud, DTPA, and unfair debt collection practices, and remand to the trial court for further proceedings consistent with this opinion.


Bailey C. Moseley
Justice

Date Submitted:     November 5, 2013
Date Decided:       November 22, 2013