**Reverse and Render and Opinion Filed August 11, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00843-CV

### ONCOR ELECTRIC DELIVERY COMPANY LLC, Appellant
### V.
### CITY OF RICHARDSON, TEXAS, Appellee

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-12-12696**

## MEMORANDUM OPINION

Before Justices Bridges, Lang, and Schenck
Opinion by Justice Bridges

The issue presented in this appeal is whether appellant Oncor Electric Delivery Company LLC ("Oncor") or the City of Richardson (the "City") is responsible for the costs of relocating Oncor's utility poles, wires, and related equipment in the City's public alleys so the City can widen the alleys. Both parties filed motions for summary judgment. The trial court granted the City's motion, denied Oncor's motion, and entered final judgment in favor of the City.

On appeal, Oncor argues the trial court erred because (1) the Franchise does not require Oncor to pay relocation costs; (2) no City ordinance requires Oncor to pay the costs; (3) the common law does not require Oncor to pay the costs; and (4) no statute requires Oncor to pay the costs. We reverse the trial court's judgment and render judgment in favor of Oncor.

## Background

The City is considered a home-rule city, which means it has statutory authority to grant franchises to public utilities for use of the public rights-of-way subject to conditions of use of the public rights-of-way set by the City in the franchise. In August of 2006, the Richardson City Council approved Ordinance No. 3559 (the "Franchise Contract Ordinance") granting Oncor's predecessor, TXU Electric Delivery Company ("TXU"), and its successors and assigns the right to use the City's public rights-of-way for transmission and distribution of electric power subject to certain restrictions, limitations, terms, and conditions set forth in the Franchise Contract Ordinance. TXU provided written acceptance of the Franchise Contract Ordinance on September 12, 2006. The Franchise Contract Ordinance, along with TXU's acceptance, became the Franchise Contract (the "Franchise").

Section 8 of the Franchise, titled "CONSTRUCTION IN THE PUBLIC RIGHTS-OF-WAY," provides in relevant part:

> Chapter 20, Article V of the City Code of Ordinances, as now existing or as the same may be adopted, supplemented, amended or revised ("Construction in the Public Rights-of-Way Ordinance"),[1] is incorporated by reference. The Electric Delivery Utility shall comply with all ordinances, rules and regulations of the City to the extent that such City ordinances, rules and regulations do not conflict with the provisions of this Franchise. This franchise agreement shall in no way affect or impair the rights, obligations or remedies of the parties under the Texas Public Utility Regulatory Act, or other state or federal law. . . .

> The City reserves the right for any reason whatsoever to use, to change the grade of, construct, install, repair, alter, maintain, relocate, modify, close, reduce, or widen (collectively "to change") any Public Rights-of-Way, within the present or future limits of the City. At the City's request the Electric Delivery Utility shall relocate or remove Facilities in order to accommodate such change of any Public Rights-of-Way.

---

[1] The parties refer to Chapter 20, Article V as the "rights-of-way ordinance" or "ROW" Ordinance.

Chapter 20, Article V of the City Code of Ordinances defines public rights-of-way to include "alley." It further provides, "If the City gives written notice, a person shall, *at its own expense*, temporarily or permanently, remove, relocate, change, or alter the position of person's facilities that are in the public rights-of-way within 120 days . . ." (Emphasis added.)

In February of 2010, Richardson voters approved reconstruction and widening of thirty-two alleys. The project, considered a change to the public rights-of-way, required relocation of approximately 150 electric utility poles and related electric utility facilities. The City provided notice to Oncor, as required under the ROW Ordinance; however, Oncor refused to pay for the relocation. The City notified Oncor of its breach of the Franchise in a letter dated February 2, 2011. Oncor responded by letter dated February 16, 2011 and refused to relocate the facilities at its own expense.

In the interim, Oncor filed a rate case with the PUC seeking changes in its rates, operations, and services as set forth in its tariff. In June 2011, the parties reached a settlement and enacted Ordinance No. 3823, which adopted the Tariff.

The City filed suit against Oncor for breaching the Franchise and sought injunctive relief.[2] Relying on common law, statutory law, and the Franchise, the City argued Oncor was obligated to pay the relocation costs of moving its electric utility poles and related facilities to widen the alleys. The City further argued Oncor's non-compliance was "inconsistent with Oncor's decades old, past custom and practice of complying with the Franchise Contract by relocating its facilities located in alleys at its cost for City projects." The City cited thirty-four specific instances in which Oncor had relocated its facilities, at its own expense, between 2006 and 2010.

---

[2] The City later amended its petition to include violation of City ordinances and specific performance.

Oncor answered, filed a breach of contract counterclaim, and sought a declaratory judgment. It alleged the City and Oncor are parties to the Tariff, which the City adopted as part of Ordinance No. 3823 and approved on June 13, 2011. The City argued the Tariff controls in the event of a conflict between any of its terms and those in any ordinance, such as the Franchise. Section 5.7.8 of the Tariff, titled "REMOVAL AND RELOCATION OF COMPANY'S FACILITIES AND METERS," states "Retail Customer, or the entity requesting such removal or relocation, shall pay to Company the total cost of removing or relocating such Delivery System facilities in accordance with Chapter 6." Thus, Oncor asserted the City breached the Tariff by refusing to pay for the relocation of the electric utility poles and related facilities.

Oncor filed a traditional motion for summary judgment and an amended motion for summary judgment. Oncor argued, as it does on appeal, that neither the Franchise, any City ordinance, nor statutory or common law required it to pay the relocation costs of its electric utility poles or related facilities for the City to widen its alleys. The City filed a traditional motion for summary judgment arguing the Franchise, the City's ROW Ordinance, and statutory and common law all require Oncor to pay the relocation costs. Both parties' filed responses. Oncor attached to its original motion for summary judgment the affidavit of Howard V. Fisher, the senior counsel-regulatory for Oncor. However, when Oncor filed its amended motion for summary judgment, it failed to attach or incorporate his affidavit even though Oncor relied on it for support. The City objected to Fisher's affidavit for various reasons, including failing to attach or incorporate it by reference in an amended motion for summary judgment.

A summary judgment hearing was held on February 19, 2014. After the hearing, the parties continued to file various post-hearing briefs, responses, evidence, and objections. On June 3, 2014, the trial court granted the City's motion for summary judgment and denied Oncor's motion for summary judgment. The trial court's final order states, "The Court has previously

–4–

considered and ruled on the City's motions to strike summary judgment evidence and 'responses' submitted by Oncor and the Court's rulings with regard to those motions to strike are set forth in a separate order (the 'Order on the Motions to Strike')." The City sent a letter to the trial court informing it that, "The Order on the Motions to Strike, has, however, not been entered in the record of this case." It requested the trial court sign the order, or alternatively, the City formally objected to preserve the issue for review. The record contains no order ruling on the City's objections to Oncor's summary judgment evidence.

This appeal followed.

## Standard of Review

We review the trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). The standards for reviewing summary judgments are well established, and we follow them in reviewing this appeal. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). In a tradition motion for summary judgment, the party moving for summary judgment has the burden of showing no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548.

When both parties move for summary judgment, each party bears the burden of establishing it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 357 (Tex. 2000). When the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both parties and determine all questions presented. *Id*. We render the judgment the trial court should have rendered or reverse and remand if neither party has met its summary judgment burden. *Id*.

## Summary Judgment Evidence

We begin our analysis by determining whether five exhibits attached to a post-summary judgment hearing letter filed by Oncor were properly before the trial court when it granted the City's summary judgment. These exhibits included a certified copy of Ordinance No. 3823 and the attached Tariff, section 25.214 of the Texas Administration Code, the pro-forma tariff as adopted in June 2006, the currently adopted pro-forma tariff, and a certified copy of the PUC's order approving the Tariff as part of the rate case settlement. Relying on Texas Rule of Evidence 204 and case law, Oncor requested the trial court take judicial notice of these documents.

The City objected to the documents because Oncor failed to request leave of court to file them and the documents were untimely. The City did not, however, challenge the documents' authenticity. The City urges the same arguments on appeal.

Texas Rule of Evidence 204(b)(2) states a court must take judicial notice of Texas municipal and county ordinances, the contents of the Texas Register, and agency rules published in the Texas Administration Code if a party requests it, and the court is supplied with the necessary information. *See* TEX. R. EVID. 204(a), (b)(2); *see also City of Farmers Branch v. Ramos*, 235 S.W.3d 462, 469 (Tex. App.—Dallas 2007, no pet.) (appellate court took judicial notice of city ordinance after appellant provided a copy of ordinance verified by the city secretary). Judicial notice under rule 204 may occur at either the trial or appellate court. *Ramos*, 235 S.W.3d at 469; *see also Eckmann v. Des Rosiers*, 940 S.W.2d 394, 399 (Tex. App.—Austin 1997, no writ) (holding that appellate court has power to take judicial notice of Texas Register and administrative code).

Here, Oncor requested the trial court take judicial notice of the exhibits in a post-hearing letter brief. Attached to the letter, Oncor provided a certified copy from the City's secretary of Ordinance No. 3823 and the attached Tariff, approved June 13, 2011. Oncor later provided

website links to all the attached documents in a follow up letter, which the court received before signing the final summary judgment order. Thus, Oncor provided the trial court, and this Court, with the necessary information to take judicial notice under rule 204 of the exhibits attached to its post-summary judgment hearing letter. As such, the documents were properly before the trial court, and are properly before this Court, for consideration as part of the summary judgment evidence.

**Discussion**

Both parties agree the narrow legal issue of this appeal is whether Oncor or the City is responsible for the costs of relocating Oncor's electric utility poles, wires, and related equipment in the City's public alleys so the City can widen the alleys. Both parties rely on contrasting sentences within section 8 of the Franchise to support their argument as to who is responsible for payment. Thus, we begin our discussion by analyzing section 8 of the Franchise. Section 8 provides in relevant part:

> [The ROW Ordinance], is incorporated by reference. The Electric Delivery Utility shall comply with all ordinances, rules and regulations of the City to the extent that such City ordinances rules and regulations do not conflict with the provisions of this Franchise. This franchise agreement shall in no way affect or impair the rights, obligations or remedies of the parties under the Texas Public Utility Regulatory Act, or other state or federal law. . . .
>
> The City reserves the right for any reason whatsoever to . . . change . . . any Public Rights-of-Way. . . . At the City's request the Electric Delivery Utility shall relocate or remove Facilities in order to accommodate such change of any Public Rights-of-Way.

The ROW Ordinance defines public rights-of-way to include "alley." It further provides, "If the City gives written notice, a person shall, *at its own expense*, temporarily or permanently, remove, relocate, change, or alter the position of person's facilities that are in the public rights-of-way within 120 days . . ." (Emphasis added.) The City argues this language supports its theory that

–7–

Oncor must pay for relocation costs of electric utility poles, wires, and related equipment. Oncor responds the City's argument ignores the language in section 8 that the Franchise "shall in no way affect or impair the rights, obligations or remedies of the parties under the Texas Public Utility Regulatory Act, or other state or federal law." Oncor contends two laws are contrary to, and expressly trump, the Franchise: section 37.101(c) of the Texas Utilities Code and the Tariff. *See* TEX. UTIL. CODE ANN. § 37.101(c) (West 2007). We focus our analysis on the Tariff.

The PUC requires each utility, such as Oncor, to file a tariff listing the electric utility's services and rates, and it governs the electric utility's relationship with its customers. TEX. UTIL. CODE ANN. § 32.101(a), (b) (West 2007). The PUC defines "tariff" as "the schedule of a utility, municipally-owned utility, or electric cooperative containing all the rates and charges stated separately by type of service, the rules and regulations of the utility, and any contracts that affect rates, charges, terms or conditions of service." 16 TEX. ADMIN. CODE ANN. § 25.5(131) (West 2015). Generally, once the PUC approves a tariff, an electric utility may not directly or indirectly demand, charge, or collect any rate or charge different from those in the approved tariff. *Id*. § 24.21(a).

The City is party to the Tariff because it agreed to be bound by it when it enacted Ordinance No. 3823, which adopted the Tariff. Section 5.7.8 of the Tariff states that "Retail customer, or the *entity requesting* such removal or relocation, *shall pay* to Company the total cost of removing or relocating such Delivery System facilities in accordance with Chapter 6." (Emphasis added.) Thus, the plain language of section 5.7.8 establishes that the City, as the entity requesting relocation, must pay Oncor.

Oncor further supports this conclusion by arguing that under the filed-rate doctrine, any other contractual provisions contradicting the Tariff are unenforceable. The "filed-rate doctrine" applies when state law creates a state agency and a statutory scheme under which the agency

determines reasonable rates for the service provided. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 216 (Tex. 2002).[3] The doctrine holds that a tariff filed with, and approved by, an administrative agency under a statutory scheme is presumed reasonable unless a litigant proves otherwise. *Id*. Thus, under the doctrine, filed tariffs govern an electric utility's relationship with its customers and have the force and effect of law until suspended or set aside. *Id*. at 217.

The City argues the filed-rate doctrine does not apply under these facts because Oncor failed to offer any evidence establishing that the proposed June 2011 Settlement Ordinance Tariff, attached as part of Ordinance No. 3823, was adopted and approved by the City during the time it had rate making jurisdiction. Thus, the City argues Oncor failed to conclusively establish that the filed-rate doctrine applies to the proposed June 2011 Settlement Ordinance Tariff and should be accorded the stature of law. As discussed below, we are unpersuaded by the City's arguments.

The PUC, pursuant to section 25.214 of the administrative code, established a pro-forma tariff, whose provisions must be included in every tariff of every electric utility provider, such as Oncor. *See* 16 TEX. ADMIN. CODE ANN. § 25.214(b) (noting the pro-forma tariff governs the terms and conditions of retail delivery services by all transmission and distribution utilities in Texas) & § 25.214(c) ("Each TDU in Texas shall file with the commission a tariff to govern its retail delivery service using the pro-forma tariff in subsection (d) of this section.") (West 2015). Section 5.7.8, which requires the entity requesting removal or relocation pay the utility for such costs, is a pro-forma tariff provision. *See* 16 TEX. ADMIN. CODE ANN. § 25.214(d) (West 2015). Because the City was required to include this provision in its Tariff, it is immaterial whether Oncor conclusively established that the City approved the proposed June 2011 Tariff within the

---

[3] The Public Utility Regulatory Act gave the PUC broad powers "to do anything specifically designated or implied by [the PURA] that is necessary and convenient" to the PUC's authority. *See* TEX. UTIL. CODE ANN. § 14.001 (West 2007); *Grant*, 73 S.W.3d at 216.

City's rate-making jurisdiction. The City was required to approve section 5.7.8 and include it in its Tariff. Regardless of when the Tariff was formally adopted, section 5.7.8 would be included because the City did not have discretion under section 25.214(d) to exclude it. Thus, we agree with Oncor that section 5.7.8, as part of the pro-forma tariff, must be given the force and effect of law under the filed-rate doctrine. *See Grant*, 73 S.W.3d at 216 (filed tariffs govern a utility's relationship with its customers and have the force and effect of law). Accordingly, we conclude section 5.7.8 of the Tariff is a law, which the "franchise agreement shall in no way affect or impair . . . ."

This conclusion is further supported by Texas Public Utility Commission, *Appeal from an Ordinance of the City of Allen*, PUC Docket No. 25429 (May 9, 2003), *aff'd on other grounds*, *City of Allen v. Public Utility Commission of Texas*, 161 S.W.3d 195 (Tex. App.— Austin 2005, no pet.). In that case, Oncor appealed to the PUC for a determination of whether four city ordinances required it to provide electric service contrary to the terms of its tariffs, PUC rules, and the PURA. Initially, Oncor sought permits from Allen for the construction of an overhead distribution line on wooden utility poles; however, Allen denied the permits because they did not comply with city ordinances requiring Oncor, at its own expense, to place distribution lines underground. *See City of Allen*, 161 S.W.3d at 200. The PUC concluded Allen exceeded its authority in adopting provisions that violated Oncor's Tariff for Retail Delivery Services. Included in its analysis, the PUC noted Allen's ordinances "are inconsistent with Chapter 5 of the pro-forma tariff, which states that a utility shall construct non-standard delivery system facilities when asked, but the entity requesting the construction shall pay the utility the estimated costs before such construction." *See* 16 TEX. ADMIN. CODE ANN. §25.214(d).

When Allen appealed the decision to the district court and then to the Austin Court of Appeals, the issue before the courts was whether the PUC had jurisdiction over certain repealed

and non-repealed portions of the municipal ordinances challenged below and not whether the PUC correctly determined that the tariff, which contradicted city ordinances, controlled who paid for construction of non-standard delivery systems. *See City of Allen*, 161 S.W.3d at 200. However, the appellate court noted in its jurisdictional analysis that Oncor's tariff had to include terms from the Commission-approved, pro-forma tariff. *Id*. at 203; *see also* 16 TEX. ADMIN. CODE ANN. §25.214(d). It further stated, "Allen's ordinances conflict with the provisions in Oncor's tariff that require customer payment for installment of non-standard distribution facilities." *City of Allen*, 161 S.W.3d at 204.

While the City argues *City of Allen* is inapplicable because nowhere "is there any mention or discussion of a provision of a tariff similar to the tariff section on which Oncor relies, section 5.7.8," the City too quickly dismisses that the underlying case before the PUC did in fact involve a pro-forma tariff provision (5.7.5), which similar to 5.7.8, was required to be included in the City of Allen's tariff. The Allen city ordinances required the utility to pay for non-standard delivery system facilities when asked, which directly conflicted with the pro-form tariff requiring the requester to pay.

Similar to *City of Allen*, the City's Franchise conflicts with the Tariff as to who pays for relocation costs. Thus, while we acknowledge the Austin court was not presented, and therefore, did not decide the issue before us, we nonetheless find the PUC Order's conclusion and the Austin court of appeal's statements persuasive to the present facts. Thus, we likewise conclude the City's Franchise cannot conflict with a provision of the Commission-approved pro-forma tariff.[4]

---

[4] Having determined the Tariff controls over the language in the Franchise, we need not address the parties' arguments addressing whether section 37.101(c) of the Texas Public Utilities Code is also a law that trumps the Franchise. TEX. R. APP. P. 47.1. Section 37.101(c) of the utilities code provides, in relevant part, that "the governing body of a municipality may require an electric utility to relocate the utility's facility at the utility's expense to permit the widening of a street. . . ." TEX. UTIL. CODE ANN. § 37.101(c) (West 2007). Relying on rules of statutory construction to interpret this section of the utility code, Oncor argued it is only required to pay for the relocation of facilities in public streets, not alleys, and streets have not historically been considered alleys.

In reaching this conclusion, we are unpersuaded by the City's argument that Oncor admitted the June and August Tariffs were not identical; therefore, Oncor could not have relied on the June Tariff to support its filed-rate doctrine argument. While we acknowledge Oncor "admitted" in a response to the City's second request for admissions that the two tariffs were not identical, our previous discussion regarding the pro-forma tariff renders any admission irrelevant.

First, Oncor relied on one Tariff provision, section 5.7.8, and not the Tariff as a whole to support its argument for applying the filed-rate doctrine. Further, Oncor presented summary judgment evidence, through affidavit testimony of Howard Fisher, its regulatory senior counsel, that section 5.7.8 is one of the provisions required by the PUC's pro-forma tariff and that the language of section 5.7.8 has been the same since before the parties entered into the Franchise in 2006. Fisher testified, without objection from the City, that section 5.7.8 has not been revised since at least July 15, 2006, and section 5.7.8 was not revised by Ordinance 3823 or the PUC's August 26, 2011 Order in PUC Docket No. 38929.[5]

Moreover, the City agreed with these statements. In its motion for summary judgment, the City stated, "Section 5.7.8. of the Tariff, . . . , was exactly the same before the 2011 rate case settlement as it is now, after the 2011 rate case settlement. Section 5.7.8 was exactly the same after the 2011 rate case settlement as it was in 2006 when the Franchise Contract was executed by Oncor." Thus, neither party disputes the language of section 5.7.8 for purposes of this appeal.

---

[5] The City objected to the trial court, and again on appeal, that Fisher's affidavit was not properly before the court because Oncor failed to attach it or incorporate it by reference in its amended motion for summary judgment. The City's argument is without merit, and Fisher's affidavit was properly before the trial court for consideration. *See Dousson v. Disch*, 629 S.W.2d 111, 112 (Tex. App.—Dallas 1981, writ dism'd w.o.j.) (concluding affidavit, which was not attached to a second motion for summary judgment, constituted competent summary judgment evidence); *see also Galindo v. Snoddy*, 415 S.W.3d 905, 914 (Tex. App.—Texarkana 2013, no pet.) (noting that while the better practice is to attach all evidence to the summary judgment motion, rule 166a does not require the evidence be attached, but merely "on file" for the court's consideration); *Vaughn v. Burroughs Corp.*, 705 S.W.2d 246, 248 (Tex. App.—Houston [14th Dist.] 1986, no writ) (relying on *Dousson*, appellate court concluded trial court did not reversibly err by considering summary judgment evidence attached to previous motions, even though not incorporated by reference in later motion). Because our analysis focuses on the interplay between the Franchise and the Tariff, we need not address the City's remaining arguments as to Fisher's affidavit because the arguments do not impact our analysis. Moreover, Fisher's statements that are relevant for our analysis were not objected to by the City.

–12–

Lastly, we are unpersuaded by the City's argument that Oncor's prior course of conduct requires it to pay for relocation. The City contends Oncor should be required to pay because it paid for relocation to accommodate other various City projects from 2006 to 2010. However, when a contract is unambiguous, as both parties here agree, a court does not consider past conduct or course of dealing. *See Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 732 (Tex. 1981); *James L. Gang & Assoc., Inc. v. Abbott Lab., Inc*., 198 S.W.3d 434, 437 (Tex. App.—Dallas 2006, no pet.). Thus, the City's argument is without merit.

Although we have concluded the June 2011 Settlement Ordinance Tariff must be accorded the stature of law and controls over the Franchise, the City argues in the alternative that the Tariff still must be interpreted to conform with common law. Because the common law requires Oncor to pay relocation costs, the City alleges the trial court properly granted its summary judgment. We now turn to these arguments.

To support its argument, the City relies on section 3.11 of the Tariff, which provides the "Company's provision of Delivery Service is governed by all Applicable Legal Authorities as defined herein. This Tariff is to be interpreted to conform therewith." "Applicable Legal Authorities" is defined to include "a Texas or federal law."

The City submits the Texas Supreme Court, as recently as 2009 in *Southwestern Bell Telephone, L.P. v. Harris County Toll Road Authority*, 282 S.W.3d 59 (Tex. 2009), reaffirmed the "long-established common law principle . . . a utility forced to relocate from a public right-of-way must do so at its own expense." *Sw. Bell Tel., L.P*., 282 S.W.3d at 62 (citing *Norfolk Redevelopment & Hous. Auth*., 464 U.S. at 34). Significantly, the City omits the language immediately following its cited excerpt, which states:

> We have said that "[i]n the *absence of assumption by the state of part of the expense*, it is clear that [utility companies] could be required to remove at their own expense any installations owned

–13–

> by them and located in public rights of way whenever such relocation is made necessary by highway improvements.

*Sw. Bell Tel.*, 282 S.W.3d at 62 (emphasis added) (citing *State v. City of Austin*, 331 S.W.2d 737 (Tex. 1960)). The court in *Southwestern Bell Telephone, L.P.* also cited 2-28 SANDRA M. STEVENSON, ANTIEAU ON LOCAL GOVERNMENT LAW, § 28.09[3] (2d ed. 2008) (emphasis added), a local government treatise, which provides as follows:

> Under the traditional common law rule, and *in the absence of an agreement* or statute to the contrary, whenever state or local authorities make reasonable requests of a public utility to relocate, remove or alter its structures or facilities, the utility must bear the cost of doing so, even though the public utility may be operating pursuant to franchise from the local government.

Thus, these authorities indicate the common law rule that the electric utility pay for relocation costs can be abrogated when parties have an agreement to the contrary. As discussed above, the City and Oncor entered into such an agreement. Accordingly, under these facts, the common law does not trump the Tariff, which the City agreed to be bound by, as incorporated in its Franchise.

Having considered both parties arguments raised in their motions for summary judgment, we conclude Oncor established as a matter of law that no genuine issue of material fact exists as to the City's obligation to pay the costs of relocating Oncor's electric utility poles, wires, and related equipment so the City can widen the alleys, and therefore, Oncor is entitled to judgment as a matter of law. Thus, the trial court erred by denying Oncor's motion for summary judgment and granting the City's motion for summary judgment.

## Conclusion

We reverse the trial court's judgment and render judgment in favor of Oncor.  *See* Tex.

R. App. P. 43.3.

140843F.P05

/David L. Bridges/

DAVID L. BRIDGES
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ONCOR ELECTRIC DELIVERY
COMPANY LLC, Appellant

No. 05-14-00843-CV     V.

CITY OF RICHARDSON, TEXAS,
Appellee

On Appeal from the 134th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-12-12696.
Opinion delivered by Justice Bridges.
Justices Lang and Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** in favor of appellant ONCOR ELECTRIC DELIVERY COMPANY LLC.

It is **ORDERED** that appellant ONCOR ELECTRIC DELIVERY COMPANY LLC recover its costs of this appeal from appellee CITY OF RICHARDSON, TEXAS.


Judgment entered August 11, 2015.